## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

FRANKIE WINSETT, and
DANA WINSETT,
individuals,

                                    Case No.:

      Plaintiffs,

v.

REGIONS FINANCIAL CORPORATION,
a/k/a REGIONS BANK d/b/a
REGIONS MORTGAGE,
a foreign for-profit corporation,
EQUIFAX INFORMATION
SERVICES LLC,
a foreign limited liability company,
EXPERIAN INFORMATION
SOLUTIONS, INC.,
a foreign for-profit corporation, and
TRANS UNION LLC,
a foreign limited liability company,

      Defendants.

_____/

## COMPLAINT

**COME NOW**, Plaintiffs, FRANKIE WINSETT and DANA WINSETT

(hereinafter collectively, "Plaintiffs"), by and through the undersigned counsel, and

hereby sue Defendants, REGIONS FINANCIAL CORPORATION, a/k/a

REGIONS BANK d/b/a REGIONS MORTGAGE (hereinafter, "Regions"),

EQUIFAX INFORMATION SERVICES LLC (hereinafter, "Equifax"),

EXPERIAN INFORMATION SOLUTIONS, INC. (hereinafter, "Experian"), and

TRANS UNION LLC (hereinafter, "Trans Union") (hereinafter collectively,

1

"Defendants").  In support thereof, Plaintiffs state:

**PRELIMINARY STATEMENT**

1.     This is an action brought by individual consumers for damages for Regions' violations of the Fair Credit Reporting Act, 15 United States Code, Section 1681 *et seq*. (hereinafter, the "FCRA") wherein Regions improperly credit-reported and subsequently verified its credit reporting of a consumer mortgage loan account on Plaintiffs' consumer credit reports and in Plaintiffs' consumer credit files as maintained by Equifax, Experian, and Trans Union.  More specifically, despite Plaintiffs reaffirming their mortgage through their bankruptcy case with Regions—and never missing any payments—Defendants reported that Plaintiffs were late or past due on payments and failed to report payment information for the months of December 2021, and January 2022 to September 2022. Additionally, Regions reported an open mortgage account with an erroneous date of closure and failed to report payment information for the months of December 2021, and January 2022 to February 2023.

2.     Despite Plaintiffs repeatedly advising Regions of its errors and repeatedly disputing Regions' reporting of such erroneous information directly to Equifax, Experian, and Trans Union, Regions *continued* to report Plaintiffs as late and past-due for months during which Plaintiffs made payments on the mortgage account and failed to report payment history for the mortgage account in violation of the FCRA.

3.     Furthermore, this is an action for damages for Equifax's, Experian's, and Trans Union's violations of the FCRA wherein Equifax, Experian, and Trans Union each continued to incorrectly report Plaintiffs' mortgage account as late and past-due

2

on Plaintiffs' mortgage account and continued to exclude payment history from the reporting of Plaintiffs' mortgage accounts after Plaintiffs repeatedly advised that Plaintiffs had reaffirmed the mortgage accounts through their bankruptcy case with Regions and had made timely, full payments on both accounts.

## JURISDICTION, VENUE & PARTIES

4.      Jurisdiction of this Court arises under 28 United States Code, Section 1331 as well as pursuant to the FCRA, 15 United States Code Section 1681 *et seq*.

5.      Defendants are subject to the jurisdiction of this Court as Defendants each regularly transact business in this District.

6.      Venue is proper in this District as the acts and transactions described herein occur in this District.

7.      At all material times herein, Plaintiffs are each a natural person residing in Pinellas County, Florida.

8.      At all material times herein, Regions is a for-profit corporation existing under the laws of the state of Delaware with its principal place of business located at 1900 Fifth Avenue North, Birmingham, AL 35203.

9.      At all material times herein, Equifax is a foreign limited liability company existing under the laws of the state of Georgia with its principal place of business located at 1550 Peachtree Street, NW, Atlanta, Georgia 30309.

10.     At all material times herein, Experian is a for-profit corporation existing under the laws of the state of Ohio with its principal place of business located at 475 Anton Boulevard, Costa Mesa, California 92626.

11.     At all material times herein, Trans Union is a foreign limited liability company existing under the laws of the state of Delaware with its principal place of business located at 555 West Adams Street, Chicago, Illinois 60661.

## FCRA STATUTORY STRUCTURE

12.     Congress enacted the FCRA requiring consumer reporting agencies to adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information.  *See* 15 United States Code, Section 1681b.

13.     Under the FCRA, whenever a consumer reporting agency prepares a consumer report, it shall follow reasonable procedures to assure *maximum possible accuracy* of the information concerning the individual about whom the report relates. *Id.* at § e(b) (emphasis added).

14.     Under the FCRA, if a consumer disputes the completeness or accuracy of any item of information contained in a consumer's file, and the consumer notifies the agency directly of such dispute, the agency shall reinvestigate—free of charge— and report the current status of the disputed information, or delete the item from before the end of the 30-day period beginning on the date on which the agency receives notice of the consumer's dispute.  *Id.* at § i(a).

15.     Under the FCRA, when a consumer reporting agency conducts any reinvestigation with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information

submitted by the consumer.  *Id.* at § i(a)(4).

16.    Under the FCRA, if, after any reinvestigation of any information disputed by a consumer, an item of information is found to be inaccurate, incomplete, or cannot be verified, the consumer reporting agency shall promptly delete that item of information from the consumer's file or modify that item of information, as appropriate, based on the results of the reinvestigation.  *Id.* at § i(a)(5).

17.    Under the FCRA, after a furnisher of information receives notification pursuant to Section 1681i(a)(2) of a dispute with regard to the completeness or accuracy of any information provided by a person to a consumer reporting agency, the furnisher shall: (A) conduct an investigation with respect to the disputed information; (B) review all relevant information provided by the consumer reporting agency pursuant to Section 1681i(a)(2) of this title; (C) report the results of the investigation to the consumer reporting agency; and (D) if the investigation finds that the information is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information and that compile and maintain files on consumers on a nationwide basis.  *Id.* at § s-2(b).

18.    Under the FCRA, any person who willfully fails to comply with any requirement imposed under this subchapter with respect to any consumer is liable to that consumer: in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure; for statutory damages of not less than $100 and not more than $1,000; for such amount of punitive damages as the court may allow; and for the costs of the action together with reasonable attorneys' fees.  *Id.* at § n.

19. Under the FCRA, any person who is negligent in failing to comply with any requirement imposed with respect to any consumer is liable to that consumer in an amount equal to the sum of any actual damages sustained by the consumer as a result of the failure and the costs of the action together with reasonable attorneys' fees. *Id.* at § o

## GENERAL ALLEGATIONS

20. At all material times herein, Plaintiffs are each an alleged "consumer" or "debtor" as defined by the FCRA, Section 1681a(c) because they are each an individual and allegedly obligated to pay a debt.

21. At all material times herein, Regions, itself and through its subsidiaries, regularly services mortgage loans owed or allegedly owed by consumers residing in Pinellas County, Florida.

22. At all material times herein, Regions is a "person" who furnishes information to credit reporting agencies—specifically Equifax, Experian, and Trans Union—as provided in the FCRA and as defined by 15 United States Code, Section 1681s-2.

23. At all material times herein, Regions furnishes information to the credit reporting agencies concerning two (2) consumer mortgage loan accounts, appearing as information supplied by "UP/REGIONSM", "Regions Bank" and/or "Regions Bank DBA Regions MTG" referenced by account numbers beginning 401-, ending -9643, and/or ending -3085 (hereinafter, the "Accounts").

24. At all material times herein, Regions furnishes, reports, and publishes

specific details of consumers alleged outstanding or delinquent debt accounts to compel or coerce the consumer to either satisfy an alleged balance owed, or suffer the consequences of delinquent accounts, such as higher interest rates on consumer loans or complete denial of credit.

25.     At all material times herein, Regions also does business as Regions Mortgage and/or similar names.

26.     At all material times herein, Equifax, Experian, and Trans Union are each a "consumer reporting agency" as defined in 15 United States Code, Section 1681a(f) of the FCRA and each regularly engages in the business of assembling, evaluating, and disseminating information concerning consumers for the purpose of furnishing consumer reports.  Equifax, Experian, and Trans Union each disburse such consumer reports to third parties under contract for monetary compensation.

27.     At all material times herein, Defendants act themselves or through their agents, employees, officers, members, directors, successors, assigns, principals, trustees, sureties, subrogees, representatives, third-party vendors, and insurers.

28.     All necessary conditions precedent to the filing of this action occurred, or Defendants waived or excused the same.

## **FACTUAL ALLEGATIONS**

29.     During or about December 2021, Plaintiffs jointly filed for Chapter 7 bankruptcy in the Middle District of Florida, Tampa Division, Case No. 8:21-bk-06152 (hereinafter, "Bankruptcy Case").

30.     During or about February 28, 2022, Plaintiffs entered into a

Reaffirmation Agreement with Regions Bank d/b/a Regions Mortgage (hereinafter, "Reaffirmation Agreement").

31.     In the Reaffirmation Agreement, Plaintiffs agreed to repay $227,437.21 at an annual percentage rate of 4.8750 percent with a monthly payment of $1,617.27 that began on January 1, 2022.

32.     As such, Plaintiffs' Reaffirmation Agreement was in effect as of February 2022.

33.     To date, Plaintiffs have made timely payments on the Reaffirmation Agreement.

34.     On or about March 8, 2022, the court entered a discharge order in Plaintiffs' Bankruptcy Case.

**DEFENDANTS' CREDIT
REPORTING OF PLAINTIFFS' MORTGAGE ACCOUNTS
AND PLAINTIFFS' DISPUTES TO DEFENDANTS UNDER THE FCRA**

35.     On or about September 8, 2022, Plaintiffs obtained copies of their consumer credit disclosure reports from Equifax, Experian, and Trans Union.

36.     Importantly, Plaintiffs identified reporting errors with respect to the monthly payment history of one of the Accounts across each of their three (3) credit reports.

37.     More specifically, despite Plaintiffs making every payment on the Account beginning in 40108- and/or ending in -9643 in full and in a timely manner, Equifax, Experian, and Trans Union each inaccurately reported the Account.

38.     More specifically, Trans Union reported the Account as "Account was

8

Included in Bankruptcy." and "Remarks- Chapter 7 Bankruptcy" with no data listed for the months of December 2021, January 2022, February 2022, March 2022, April 2022, May 2022, June 2022, and July 2022.

39.     Similarly, Experian reported the Account as discharged through Plaintiffs' Bankruptcy Case with no balance reporting, no recent payment amount, and no monthly payment amount.

40.     Additionally, Plaintiffs were not receiving positive payment history for the months of January 2022, February 2022, March 2022, April 2022, May 2022, June 2022, July 2022, and August 2022.

41.     Finally, Equifax reported the Account as "Closed" and included in bankruptcy with no reported balance or date of last payment.

42.     On or about September 15, 2022, Plaintiffs sent a letter, with the assistance of their attorneys, to Equifax, Experian, and Trans Union disputing Defendants' reporting of the Account (hereinafter, "First Dispute").   Please see attached a true and correct copy of said First Dispute labeled as Composite Exhibit "A."

43.     Plaintiffs' First Dispute advised Defendants that Plaintiffs identified errors, inaccuracies, and misleading information on their credit reports and in their credit files, specifically, information reported by Defendants with respect to Plaintiffs' Account. *See* Ex. A.

44.     More specifically, Plaintiffs' First Dispute advised Defendants that Plaintiffs made timely payments on the Account every month for the months of

December 2021, January 2022, February 2022, March 2022, April 2022, May 2022, June 2022, July 2022, and August 2022, but also advised that Plaintiffs had not missed any other payments on their mortgage Account. *Id.*

45.     Furthermore, Plaintiffs' First Dispute advised Defendants' that the Account should be listed as "Open" and should be marked as included in a Reaffirmation Agreement, not discharged through bankruptcy. *Id.*

46.     Equifax, Experian, and Trans Union each received Plaintiffs' First Dispute.

47.     Trans Union communicated Plaintiff's First Dispute to Regions.

48.     Regions received notice of Plaintiffs' First Dispute via Trans Union.

49.     Equifax communicated Plaintiff's First Dispute to Regions.

50.     Regions received notice of Plaintiffs' First Dispute via Equifax.

51.     Experian communicated Plaintiffs' First Dispute to Regions with respect to Plaintiff Dana Winsett.

52.     Regions received notice of Plaintiffs' First Dispute via Experian with respect to Plaintiff Dana Winsett.

53.     However, upon information and belief, Experian failed to communicate Plaintiffs' First Dispute to Regions with respect to Plaintiff Frankie Winsett, and Experian failed to conduct any investigation or re-investigation with respect to Plaintiff Frankie Winsett's First Dispute.

54.     Plaintiffs' First Dispute provided Defendants with sufficient information allowing Defendants to identify their reporting errors with respect to the Account, and

therefore, to correct their inaccurate reporting.

55.     On or about September 27, 2022, Trans Union sent its dispute results to each Plaintiff individually in response to Plaintiffs' First Dispute. Please see attached true and correct copies of relevant pages from said dispute results labeled as Composite Exhibit "B."

56.     While Trans Union had updated its reporting of the Account to show that it was included in a Reaffirmation Agreement, Trans Union and Regions continued to report the Account with a maximum delinquency of 90 days in February 2017 despite Plaintiffs making all payments.  *See* Ex. B at pp. 3 and 5.

57.     Additionally, Trans Union failed to mark or otherwise notate that Plaintiffs disputed Trans Union's reporting of the Account.

58.     After September 27, 2022, Trans Union generated consumer reports regarding each Plaintiff—including the inaccurate and false late payment information on the Account—and Trans Union published such reports to Plaintiffs' current creditors and prospective creditors, resulting in hard and/or soft credit inquiries on Plaintiffs' credit reports as maintained by Trans Union.

59.     On or about September 29, 2022, Equifax sent a letter to Plaintiff Frankie Winsett including Equifax's dispute results in response to Plaintiffs' First Dispute. Please see attached true and correct copies of relevant pages from Equifax's First Dispute Results labeled as Composite Exhibit "C."

60.     Equifax's letter dated September 29, 2022, stated "WE HAVE VERIFIED THAT THIS ITEM HAS BEEN REPORTED CORRECTLY" and

included Equifax's reporting of the Account as of September 29, 2022.  *See* Ex. C at p. 6.

61.    Additionally, Equifax failed to mark or otherwise notate that Plaintiff Frankie Winsett disputed Equifax's reporting of the Account.

62.    After September 29, 2022, Equifax generated consumer reports regarding Plaintiff Frankie Winsett—including the inaccurate and false account status information on the Account—and Equifax published such reports to Plaintiff Frankie Winsett's current creditors and prospective creditors, resulting in hard and/or soft credit inquiries on Plaintiff Frankie Winsett's credit reports as maintained by Equifax.

63.    On or about September 30, 2022, Equifax sent a letter to Plaintiff Dana Winsett including Equifax's dispute results in response to Plaintiffs' First Dispute.  *See* Ex. C at pp. 3-4.

64.    Equifax's letter dated September 30, 2022, addressed both Accounts and stated incorrectly that the Account ending in -3085 was included in bankruptcy and was now closed and the Account ending in -9643 had been verified by the creditor as reported accurately.  *See* Ex. C at pp. 3-4.

65.    Additionally, Equifax failed to mark or otherwise notate that Plaintiff Dana Winsett disputed Equifax's reporting of the Accounts.

66.    After September 30, 2022, Equifax generated consumer reports regarding Plaintiff Dana Winsett—including the inaccurate and false account status information on the Accounts—and Equifax published such reports to Plaintiff Dana Winsett's current creditors and prospective creditors, resulting in hard and/or soft credit

inquiries on Plaintiff Dana Winsett's credit reports as maintained by Equifax.

67.     On or about October 11, 2022, Experian sent a letter to Plaintiff Dana Winsett including Experian's dispute results in response to Plaintiffs' First Dispute. Please see attached true and correct copies of relevant pages from said dispute results labeled as Composite Exhibit "D."

68.     Experian's letter dated October 11, 2022, addressed both Accounts and stated incorrectly that the Account beginning in 401089- was 90 days late in February 2017 yet now showed the Account as included in a Reaffirmation Agreement, and the Account beginning in 401001- was included in bankruptcy and had been verified by the creditor as reported accurately.  *See* Ex. D at pp. 3-4.

69.     Additionally, Experian failed to mark or otherwise notate that Plaintiff Dana Winsett disputed Experian's reporting of the Accounts.

70.     After October 11, 2022, Experian generated consumer reports regarding Plaintiff Dana Winsett—including the inaccurate and false account status information on the Accounts—and Experian published such reports to Plaintiff Dana Winsett's current creditors and prospective creditors, resulting in hard and/or soft credit inquiries on Plaintiff Dana Winsett's credit reports as maintained by Experian.

71.     Plaintiff Frankie Winsett did not receive a response from Experian or dispute results from Experian regarding Plaintiffs' First Dispute.

72.     During or about January 2023, Plaintiff Frankie Winsett obtained a copy of his consumer disclosure reports from Trans Union.  Please see attached a true and correct copy of relevant pages from Plaintiffs' January Trans Union credit reports

labeled as Composite Exhibit "E."

73.     Despite Plaintiffs making all payments on the Accounts in full and in a timely manner pursuant to a Reaffirmation Agreement—and despite Plaintiffs' First Dispute advising Defendants of the same—Trans Union and Regions each continued to report the Accounts in an incorrect or incomplete way.

74.     More specifically, on Plaintiff Frankie Winsett's Trans Union credit report, Trans Union likewise reported the Account beginning 401001- with a Date Closed of December 31, 2018, and similarly reported the Account beginning 401089- with no payment data for the months of December 2021 through September 2022 despite Plaintiffs making all payments on both Accounts in a timely and full manner.

75.     During or about January 2023, Plaintiffs each obtained a copy of their Experian consumer disclosure report.  Please see attached true and correct copies of relevant pages from said January Experian reports labeled as Composite Exhibit "F."

76.     Despite Plaintiffs making all payments on the Accounts in full and in a timely manner pursuant to a Reaffirmation Agreement—and despite Plaintiffs' First Dispute advising Defendants of the same —Experian and Regions continued to report the Account beginning 401089- with no payment data for the months of January 2022 through September 2022 despite Plaintiffs making all payments on both Accounts in a timely and full manner.  *See* Ex. F at pp. 5-8 and 13-15.

77.     For the Account beginning 401001-, Experian reported the Account as "Discharged through Bankruptcy Chapter 7/Never late" and "Closed: yet the Account is still open and is being paid; it is neither closed nor discharged. *See* Ex. F at pp. 4-5

14

and 12.

78.     Additionally, as of January 2023, Experian reported two (2) social security numbers for Plaintiff Frankie Winsett, neither of which belonged to Plaintiff Frankie Winsett and the last four digits of Plaintiff Dana Winsett's social security number reported on her credit report did not belong to Plaintiff Dana Winsett. *Id.*

79.     During or about January 2023, Plaintiffs each obtained a copy of their Equifax consumer disclosure report.  Please see attached true and correct copies of relevant pages from said January Equifax reports labeled as Composite Exhibit "G."

80.     Despite Plaintiffs making all payments on the Accounts in full and in a timely manner pursuant to a Reaffirmation Agreement—and despite Plaintiffs' First Dispute advising Defendants of the same —Equifax and Regions continued to report the Account ending -9643 with no payment history for the months of January 2022 through September 2022 despite Plaintiffs making all payments on both Accounts in a timely and full manner.  *See* Ex. G at pp. 3-6 and 10-13.

81.     Furthermore, Equifax continued to report the Account ending -3085 as "Closed" and "Included in Bankruptcy" with no balance or date of last payment reported. *See* Ex. G at pp. 7-8 and 14-15.

82.     Additionally, Equifax reported a Date of First Delinquency on the Account of November 2021 and listed the delinquency as first being reported in December 2021, despite the Account never having been delinquent and all payments being made in a timely manner and for the full amount required.

83.     On or about February 16, 2023, Plaintiffs sent a letter, with the assistance

of their attorneys, to Equifax, Experian, and Trans Union disputing Defendants' reporting of the Accounts (hereinafter, "Second Dispute").  Please see attached a true and correct copy of said Second Dispute labeled as Composite Exhibit "H."

84.     Plaintiffs' Second Dispute *again* advised Defendants that Plaintiffs identified errors, inaccuracies, and misleading information on their credit reports and in their credit files, specifically, information reported by Defendants with respect to Plaintiffs' Accounts. *See* Ex. H.

85.     More specifically, Plaintiffs' Second Dispute *again* advised Defendants that Plaintiffs made timely payments on the Account beginning in 401089- and/or ending in -9643 every month for the months of December 2021, January 2022, February 2022, March 2022, April 2022, May 2022, June 2022, July 2022, August 2022, and September 2022, but also advised that Plaintiffs had not missed any other payments on their mortgage Accounts.  *Id.*

86.     Furthermore, Plaintiffs' Second Dispute advised Defendants' that the Account beginning in 401001- and/or ending in -3085 should be listed as "Open" and should be marked as included in a Reaffirmation Agreement, not discharged through bankruptcy. *Id.*

87.     Additionally, Plaintiffs advised Experian that incorrect social security numbers had been included on both of their Experian credit reports.

88.     Equifax, Experian, and Trans Union each received Plaintiffs' Second Dispute.

89.     Trans Union communicated Plaintiff's Second Dispute to Regions.

16

90.     Regions received notice of Plaintiffs' Second Dispute via Trans Union.

91.     Equifax communicated Plaintiff's Second Dispute to Regions.

92.     Regions received notice of Plaintiffs' Second Dispute via Equifax.

93.     Experian failed to communicate Plaintiffs' Second Dispute to Regions with respect to either Plaintiff, and Experian failed to conduct any investigation or re-investigation with respect to Plaintiffs' Second Dispute.

94.     Plaintiffs' Second Dispute provided Defendants with sufficient information allowing Defendants to identify their reporting errors with respect to the Account, and therefore, to correct their inaccurate reporting.

95.     On or about February 28, 2023, Trans Union sent its dispute results to each Plaintiff individually in response to Plaintiffs' Second Dispute. Please see attached true and correct copies of relevant pages from said dispute results labeled as Composite Exhibit "I."

96.     Trans Union and Regions verified and continued to report the Account beginning 401089- with a maximum delinquency of 90 days in February 2017 despite Plaintiffs making all payments and verified its reporting of the Account beginning 401001- as closed with an inaccurate date of closure and last payment.  *See* Ex. I.

97.     Additionally, Trans Union failed to mark or otherwise notate that Plaintiffs disputed Trans Union's reporting of the Accounts.

98.     After February 28, 2023, Trans Union generated consumer reports regarding each Plaintiff—including the inaccurate and false late payment information on the Accounts—and Trans Union published such reports to Plaintiffs' current

creditors and prospective creditors, resulting in hard and/or soft credit inquiries on Plaintiffs' credit reports as maintained by Trans Union.

99.    On or about March 1, 2023, Equifax sent its dispute results to each Plaintiff individually in response to Plaintiffs' Second Dispute. Please see attached true and correct copies of relevant pages from said dispute results labeled as Composite Exhibit "J."

100.    Equifax and Regions purportedly verified their reporting of the Accounts. *See* Ex. J.

101.    Additionally, Equifax failed to mark or otherwise notate that Plaintiffs disputed Equifax's reporting of the Accounts.

102.    After March 1, 2023, Equifax generated consumer reports regarding each Plaintiff—including the inaccurate and false late payment information on the Accounts—and Equifax published such reports to Plaintiffs' current creditors and prospective creditors, resulting in hard and/or soft credit inquiries on Plaintiffs' credit reports as maintained by Equifax.

103.    Experian wholly failed to respond to Plaintiffs' Second Dispute.

104.    On or about October 25, 2023, Plaintiffs sent a letter, with the assistance of their attorneys, to Equifax, Experian, and Trans Union disputing Defendants' reporting of the Accounts (hereinafter, "Third Dispute").  Please see attached a true and correct copy of said Third Dispute labeled as Composite Exhibit "K."

105.    Plaintiffs' Third Dispute *again* advised Defendants that Plaintiffs identified errors, inaccuracies, and misleading information on their credit reports and

in their credit files, specifically, information reported by Defendants with respect to Plaintiffs' Accounts. *See* Ex. K.

106.   More specifically, Plaintiffs' Third Dispute *again* advised Defendants that Plaintiffs made timely payments on the Account beginning in 401089- and/or ending in -9643 every month for the months of December 2021, January 2022, February 2022, March 2022, April 2022, May 2022, June 2022, July 2022, August 2022, and September 2022, but also advised that Plaintiffs had not missed any other payments on their mortgage Accounts. *Id*.

107.   Furthermore, Plaintiffs' Third Dispute advised Defendants' that the Account beginning in 401001- and/or ending in -3085 should be listed as "Open" and should be marked as included in a Reaffirmation Agreement, not discharged through bankruptcy. *Id.*

108.   Additionally, Plaintiff Frankie Winsett advised Experian that incorrect social security numbers had been included on his Experian credit report. *See* Ex. K at p. 9.

109.   Equifax, Experian, and Trans Union each received Plaintiffs' Third Dispute.

110.   Trans Union communicated Plaintiff's Third Dispute to Regions.

111.   Regions received notice of Plaintiffs' Third Dispute via Trans Union.

112.   Experian communicated Plaintiffs' Third Dispute to Regions with respect to Plaintiff Dana Winsett.

113.   Regions received notice of Plaintiffs' Third Dispute via Experian with

respect to Plaintiff Dana Winsett.

114.   However, upon information and belief, Experian failed to communicate Plaintiffs' Third Dispute to Regions with respect to Plaintiff Frankie Winsett, and Experian failed to conduct any investigation or re-investigation with respect to Plaintiff Frankie Winsett's Third Dispute.

115.   Equifax communicated Plaintiffs' Third Dispute to Regions with respect to Plaintiff Frankie Winsett.

116.   Regions received notice of Plaintiffs' Third Dispute via Equifax with respect to Plaintiff Frankie Winsett.

117.   However, upon information and belief, Equifax failed to communicate Plaintiffs' Third Dispute to Regions with respect to Plaintiff Dana Winsett, and Equifax failed to conduct any investigation or re-investigation with respect to Plaintiff Dana Winsett's Third Dispute.

118.   Plaintiffs' Third Dispute provided Defendants with sufficient information allowing Defendants to identify their reporting errors with respect to the Account, and therefore, to correct their inaccurate reporting.

119.   On or about November 4, 2023, Trans Union sent its dispute results to each Plaintiff individually in response to Plaintiffs' Third Dispute. Please see attached true and correct copies of relevant pages from said dispute results labeled as Composite Exhibit "L."

120.   Trans Union and Regions *again* verified and continued to report the Account beginning 401089- with a maximum delinquency of 90 days in February 2017

despite Plaintiffs making all payments and verified its reporting of the Account beginning 401001- as closed with an inaccurate date of closure and last payment. *See* Ex. L.

121.    Additionally, Trans Union failed to mark or otherwise notate that Plaintiffs disputed Trans Union's reporting of the Accounts.

122.    After November 4, 2023, Trans Union generated consumer reports regarding each Plaintiff—including the inaccurate and false late payment information on the Accounts—and Trans Union published such reports to Plaintiffs' current creditors and prospective creditors, resulting in hard and/or soft credit inquiries on Plaintiffs' credit reports as maintained by Trans Union.

123.    On or about November 4, 2023, Experian sent a letter to Plaintiff Dana Winsett including Experian's dispute results in response to Plaintiffs' Third Dispute.

124.    Experian purportedly verified its reporting of the Accounts.

125.    Additionally, Experian failed to mark or otherwise notate that Plaintiff Dana Winsett disputed Experian's reporting of the Accounts.

126.    After November 4, 2023, Experian generated consumer reports regarding Plaintiff Dana Winsett—including the inaccurate and false account status information on the Accounts—and Experian published such reports to Plaintiff Dana Winsett's current creditors and prospective creditors, resulting in hard and/or soft credit inquiries on Plaintiff Dana Winsett's credit reports as maintained by Experian.

127.    Plaintiff Frankie Winsett did not receive a response from Experian or dispute results from Experian regarding Plaintiffs' Third Dispute.

128.    On or about November 7, 2023, Equifax sent a letter to Plaintiff Frankie Winsett including Equifax's dispute results in response to Plaintiffs' Third Dispute.

129.    Equifax purportedly verified its reporting of the Accounts.

130.    Additionally, Equifax failed to mark or otherwise notate that Plaintiff Frankie Winsett disputed Equifax's reporting of the Account.

131.    After November 7, 2023, Equifax generated consumer reports regarding Plaintiff Frankie Winsett—including the inaccurate and false account status information on the Account—and Equifax published such reports to Plaintiff Frankie Winsett's current creditors and prospective creditors, resulting in hard and/or soft credit inquiries on Plaintiff Frankie Winsett's credit reports as maintained by Equifax.

132.    Plaintiff Dana Winsett did not receive a response from Experian or dispute results from Experian regarding Plaintiffs' Third Dispute.

133.    As a result of Defendants' reporting of the Accounts, Plaintiffs further dealt with the stress and anxiety of feeling hopeless, believing that they will be denied credit as a result of the erroneous and incorrect reporting of the Accounts if they need to obtain credit in the near future, and that Plaintiffs would either be denied credit or pay higher interest rates in the event they could obtain financing.

134.    Additionally, Plaintiffs did not receive the best possible terms and interest rates on were deterred from further credit applications and suffered damage to their credit reputation as a result of Defendants' conduct.

135.    Plaintiffs retained Swift Law PLLC for the purpose of pursuing this matter against Defendants, and Plaintiffs are obligated to pay their attorneys a

reasonable fee for their services.

136.   The FCRA, Sections 1681n or 1681o, or both, provide for the award of up to $1,000.00 statutory damages, actual damages, punitive damages, as well as an award of attorneys' fees and costs to Plaintiffs, should Plaintiffs prevail in this matter against Defendants.

## COUNT ONE:
## FAIR CREDIT REPORTING ACT —
## VIOLATION OF 15 UNITED STATES CODE, SECTION 1681s-2(b)
### (As to Regions Only)

Plaintiffs re-alleges paragraphs one (1) through one hundred thirty-six (136) as if fully restated herein and further states as follows:

137.   Regions is subject to, and violated the provisions of, 15 United States Code, Section 1681s-2(b), by willfully and/or negligently publishing or furnishing inaccurate trade-line information within Plaintiffs' credit reports, failing to fully and properly re-investigate Plaintiffs' disputes, failing to review all relevant information regarding the same, and failing to request that Equifax, Experian, and Trans Union accurately update the Accounts in Plaintiffs' credit reports and credit files after re-investigating Plaintiffs' repeated disputes.

138.   As described above, Regions knew—and Plaintiffs repeatedly advised Defendants—that Plaintiffs had made all necessary payments to the Accounts in full and in a timely manner.

139.   Despite Regions receiving notice of Plaintiffs' repeated disputes from Equifax, Experian, and Trans Union—including the information and documents

supporting Plaintiffs' position that the Account were included in a Reaffirmation Agreement and not discharged through bankruptcy— Regions willfully and/or negligently failed to request that Equifax, Experian, and Trans Union update their reporting of the tradelines associated with the Accounts and continued to report inaccurate, derogatory late payment information to Equifax, Experian, and Trans Union.

140.    More specifically, after receiving Plaintiffs' First Dispute in September 2022 or October 2022, Regions reported the Account beginning 401089- with a maximum delinquency of 90 days in February 2017 and with no payment data for the months of December 2021 through September 2022 and reported the Account beginning 401001- as closed with an inaccurate date of closure and last payment.

141.    Such reporting is false and inaccurate.

142.    Subsequently, in response to Plaintiffs' Second Dispute in February 2023, Regions continued to report the Accounts to Equifax, Experian, and Trans Union with inaccurate late payment information, specifically, Regions reported the Account beginning 401089- with a maximum delinquency of 90 days in February 2017.

143.    Rather than accurately update its reporting of the Accounts after receiving notice of Plaintiffs' repeated disputes, Regions inaccurately "verified" or "updated" its derogatory reporting of the Accounts which ultimately reflected negatively and adversely on Plaintiffs' credit reports and credit files as maintained by Equifax, Experian, and Trans Union.

144.    Regions' refusal to request that Equifax, Experian, and Trans Union

remove the derogatory information regarding the Accounts was intentionally, willfully, and knowingly done as Regions clearly possessed knowledge that Plaintiffs had made all payments on the Accounts in full and in a timely manner.

145.    Regions' re-investigations were not conducted in good faith.

146.    Regions' re-investigations were not conducted reasonably.

147.    Regions' re-investigations were not conducted using all information and documents reasonably available to Regions.

148.    As a result of Regions' conduct, actions, and inactions, Plaintiffs suffered damage to their credit reputation and credit worthiness, were denied credit, received less favorable credit terms, were deterred from making credit applications as they believed they would not be able to obtain favorable credit terms as a result of Regions' derogatory and continued reporting of the Accounts, did not wish to further damage their credit score with futile credit inquires, and they were continually evaluated for credit using consumer reports that reported the Accounts with late payment information resulting in the Accounts being reported as a derogatory, negative, or adverse tradelines accounts.

149.    Regions' conduct was a direct and proximate cause of, as well as a substantial factor in, causing the serious injuries, damages, and harm to Plaintiffs as stated herein.

150.    Regions' actions in violation of 15 United States Code, Section 1681s-2(b), constitute negligent or willful noncompliance, or both, with the FCRA, and entitles Plaintiffs to actual damages, statutory damages, and punitive damages, as well

as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

**COUNT TWO:**
**FAIR CREDIT REPORTING ACT —**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681e(b)**
**(As to Equifax, Experian, and Trans Union)**

Plaintiffs re-alleges paragraphs one (1) through one hundred thirty-six (136) as if fully restated herein and further states as follows:

151. Equifax, Experian, and Trans Union are each subject to, and each violated the provisions of, 15 United States Code, Section 1681e(b), by failing to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of the credit reports and credit files published and maintained concerning Plaintiffs.

152. Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy in the preparation of Plaintiffs' credit reports regarding the Accounts.

153. Further, Equifax, Experian, and Trans Union willfully and/or negligently failed to establish or follow reasonable procedures to assure maximum possible accuracy of Plaintiffs' credit reports and credit files when re-investigating Plaintiffs' disputes of the above-referenced inaccuracies contained in their Equifax, Experian, and Trans Union credit reports and credit file.

154. Specifically, as described above, Plaintiffs *repeatedly* disputed Equifax's, Experian's, and Trans Union's reporting of the Accounts by advising Equifax,

Experian, and Trans Union that the Account beginning 401089- should not be listed with a maximum delinquency of 90 days in February 2017 and with no payment data for the months of December 2021 through September 2022 and the Account beginning 401001- should not be listed as closed.

155. Additionally, Plaintiffs enclosed copies of the relevant account history for the Accounts demonstrating proof of payment.

156. Based on Plaintiffs' disputes, Equifax, Experian, and Trans Union knew—or should have known—that it was inaccurate to report Plaintiffs Accounts as 90 days late in February 2017 and with no payment data for the months of December 2021 through September 2022 and/or closed.

157. Despite Plaintiffs' repeated disputes, Equifax, Experian, and Trans Union continued to report the Accounts 90 days late in February 2017 and with no payment data for the months of December 2021 through September 2022 and/or closed, which is false and inaccurate.

158. Despite Plaintiffs' repeated disputes including documents supporting their disputes, Equifax, Experian, and Trans Union did not delete the information disputed by Plaintiffs and did not request documents from Regions in support of Regions' reporting of the Accounts.

159. Additionally, Experian continued to report at least two (2) erroneous social security numbers on Plaintiff Frankie Winsett's credit report and at least one (1) incorrect social security number on Plaintiff Dana Winsett's credit report.

160. Equifax's, Experian's, and Trans Union's reporting of the Accounts is

false and evidences Equifax's, Experian's, and Trans Union's failure to establish or follow reasonable procedures to assure the maximum possible accuracy of Plaintiffs' credit reports and credit file.

161.   Following Plaintiffs' First Dispute to Equifax regarding Equifax's reporting of the Accounts, Equifax generated consumer reports regarding each Plaintiff—including the inaccurate and false late payment information on the Accounts—and Equifax published such reports to Plaintiffs' current creditors and prospective creditors, resulting in hard and/or soft credit inquiries on Plaintiffs' credit reports as maintained by Equifax.

162.   Following Plaintiffs' First Dispute to Experian regarding Experian's reporting of the Accounts, Experian generated consumer reports regarding each Plaintiff—including the inaccurate and false late payment information on the Accounts—and Experian published such reports to Plaintiffs' current creditors and prospective creditors, resulting in hard and/or soft credit inquiries on Plaintiffs' credit reports as maintained by Experian.

163.   Following Plaintiffs' First Dispute to Trans Union regarding Trans Union's reporting of the Accounts, Trans Union generated consumer reports regarding each Plaintiff—including the inaccurate and false late payment information on the Accounts—and Trans Union published such reports to Plaintiffs' current creditors and prospective creditors, resulting in hard and/or soft credit inquiries on Plaintiffs' credit reports as maintained by Trans Union.

164.   As a result of Equifax's, Experian's, and Trans Union's conduct, actions,

and inactions, Plaintiffs suffered damage to their credit reputation and credit worthiness, were denied credit, were deterred from making credit applications as they believed they would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Accounts, did not wish to further damage their credit score with futile credit inquires, and they were continually evaluated for credit using consumer reports that reported the Accounts with late payment information resulting in the Accounts being reported as a derogatory, negative, or adverse tradeline account.

165. Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiffs as stated herein.

166. Equifax's, Experian's, and Trans Union's violations of 15 United States Code Section 1681e(b), constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiffs to actual damages, statutory damages, punitive damages, as well as attorneys' fees and costs as enumerated in 15 United States Code, Sections 1681n, or 1681o, or both.

**COUNT THREE:**
**FAIR CREDIT REPORTING ACT —**
**VIOLATION OF 15 UNITED STATES CODE, SECTION 1681i**
**(As to Equifax, Experian, and TransUnion)**

Plaintiffs re-alleges paragraphs one (1) through one hundred thirty-six (136) as if fully restated herein and further states as follows:

167. Equifax, Experian, and Trans Union are each subject to, and each

violated the provisions of, 15 United States Code, Section 1681i(a)(1), by failing to conduct reasonable re-investigations of Plaintiffs' disputes to determine whether the disputed information was inaccurate and by failing to subsequently update the inaccurate information in Plaintiffs' credit reports and credit files, Section 1681i(a)(4) by failing to review and consider all relevant information received in Plaintiffs' disputes, including all relevant attachments, and Section 1681i(a)(5) failing to update or delete any information that was the subject of Plaintiffs' disputes found to be inaccurate or that could not be verified.

168.   Specifically, Equifax, Experian, and Trans Union each willfully and/or negligently refused to properly re-investigate Plaintiffs' consumer reports upon receiving Plaintiffs' disputes, as described herein.

169.   For example, rather than conduct its own, independent re-investigation, Equifax, Experian, and Trans Union each simply relied on any information provided by Regions and continued to report false and misleading information with respect to the Accounts.

170.   Overall, Plaintiffs' disputes provided Equifax, Experian, and Trans Union with sufficient information allowing Equifax, Experian, and Trans Union to identify their reporting errors with respect to the Accounts, and therefore, to correct their inaccurate reporting.

171.   Plaintiffs' disputes explicitly advised Equifax, Experian, and Trans Union that the Account beginning 401089- should not be listed with a maximum delinquency of 90 days in February 2017 and with no payment data for the months of

December 2021 through September 2022 and the Account beginning 401001- should not be listed as closed because Plaintiffs made payments on the Accounts for each of those months and continued to do so presently.

172.    Additionally, Plaintiffs enclosed copies of the relevant account history for the Accounts demonstrating proof of payment.

173.    Despite Plaintiffs' repeated disputes, Equifax, Experian, and Trans Union continued to report the Accounts 90 days late in February 2017 and with no payment data for the months of December 2021 through September 2022 and/or closed, which is false and inaccurate.

174.    Despite Plaintiffs' repeated disputes including documents supporting their disputes, Equifax, Experian, and Trans Union did not delete the information disputed by Plaintiffs and did not request documents from Regions in support of Regions' reporting of the Accounts.

175.    Equifax, Experian, and Trans Union did not request any documents from Regions corroborating information furnished and verified by Regions to Equifax, Experian, and Trans Union regarding Plaintiffs and the Accounts in response to Plaintiffs' disputes.

176.    Furthermore, Experian wholly failed to investigate or respond to Plaintiff Frankie Winsett's First Dispute, Plaintiffs' Second Dispute, and Plaintiff Frankie Winsett's Third Dispute.

177.    Similarly, Equifax wholly failed to investigate or respond to Plaintiff Dana Winsett's Third Dispute.

178.   Equifax, Experian, and Trans Union each continued to inaccurately and inconsistently report the Accounts with derogatory, late payment information as of the date of this Complaint causing the Accounts to be reported as a derogatory, negative, or adverse account.

179.   As such, Equifax's, Experian's, and Trans Union's re-investigations were not conducted in such a way as to assure whether information regarding Plaintiffs and the Accounts was inaccurate and each failed to subsequently update and remove the inaccurate information in Plaintiffs' credit reports and credit files.

180.   Such reporting is false and evidences Equifax's, Experian's, and Trans Union's failure to conduct reasonable re-investigations of Plaintiffs' repeated disputes.

181.   Equifax's, Experian's, and Trans Union's re-investigations of Plaintiffs' disputes were not conducted using all information reasonably available to Equifax, Experian, and Trans Union because Plaintiffs' disputes enclosed copies of the relevant account history for the Accounts demonstrating proof of payment.

182.   Equifax's, Experian's, and Trans Union's failure to review and consider all information received in Plaintiffs' disputes was done in bad faith.

183.   Equifax's, Experian's, and Trans Union's reinvestigations merely copied and relied upon the inaccurate Account information conveyed by Regions.

184.   Equifax's, Experian's, and Trans Union's reinvestigations were *per se* deficient by reason of these failures in Equifax's, Experian's, and TransUnion's reinvestigations of Plaintiffs' disputes and the Accounts.

185.   As a result of Equifax's, Experian's, and Trans Union's conduct, actions,

and inactions, Plaintiffs suffered damage to their credit reputation and credit worthiness, were denied credit, were deterred from making credit applications as they believed they would not be able to obtain favorable credit terms as a result of Defendants' derogatory and continued reporting of the Accounts, did not wish to further damage their credit score with futile credit inquires, and they were continually evaluated for credit using consumer reports that reported the Accounts with late payment information resulting in the Accounts being reported as a derogatory, negative, or adverse tradelines accounts.

186.   Equifax's, Experian's, and Trans Union's actions were a direct and proximate cause of, as well as a substantial factor in, the serious injuries, damages, and harm to Plaintiffs as stated herein.

187.   Equifax's, Experian's, and Trans Union's actions in violation of 15 United States Code, Section 1681i, constitute negligent or willful noncompliance—or both—with the FCRA, and entitle Plaintiffs to actual damages, statutory damages, punitive, damages, as well as attorneys' fees and costs enumerated in 15 United States Code, Sections 1681n or 1681o, or both.

## PRAYER FOR RELIEF

**WHEREFORE**, as a direct and proximate result of Defendants' conduct, Plaintiffs respectfully request an entry of:

    a.    Judgment against Defendants for maximum statutory damages for violations of the FCRA;

    b.    Actual damages in an amount to be determined at trial;

33

c.       Compensatory damages in an amount to be determined at trial;

d.       Punitive damages in an amount to be determined at trial;

e.       An award of attorney's fees and costs; and

f.       Any other such relief the Court may deem proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues triable by right.

## SPOLIATION NOTICE AND DEMAND TO RETAIN EVIDENCE

Plaintiffs hereby give notice to Defendants and demand that Defendants and their affiliates safeguard all relevant evidence—paper, electronic documents, or data— pertaining to this litigation as required by law.

Respectfully submitted,

**SWIFT LAW PLLC**

*/s/ Jon P. Dubbeld*
**Aaron M. Swift, Esq., FBN 0093088**
**Jordan T. Isringhaus, Esq., FBN 0091487**
**Jon P. Dubbeld, Esq., FBN 105869**
**Sean E. McEleney, Esq., FBN 125561**
11300 4th Street North, Suite 260
St. Petersburg, FL 33716
Phone: (727) 755-3676
Fax: (727) 255-5332
aswift@swift-law.com
jisringhaus@swift-law.com
jdubbeld@swift-law.com
smceleney@swift-law.com
*Counsel for Plaintiff*